UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Craig Shaw,

       Plaintiff,

v.                                                      Case No. 16-11693

The City of Riverview, *et al.*,                        Sean F. Cox
                                                        United States District Court Judge

       Defendants.
_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

Plaintiff filed this action, asserting multiple claims against multiple Defendants. All claims against Defendant Managed Medical Review Organization, Inc. ("MMRO") have been dismissed by Plaintiff. The matter is currently before the Court on a Motion to Dismiss Plaintiff's First Amended Complaint brought by the remaining Defendants. The motion has been fully briefed by the parties, including supplemental briefing ordered by this Court. The Court finds that oral argument would not aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court shall grant the motion in part and deny it in part. The Court shall grant the motion to the extent that the Court shall dismiss Counts I, II, IV, V, and VII of Plaintiff's First Amended Complaint. The motion shall be denied in all other respects, leaving Counts III and VI remaining in this action.

1

## PROCEDURAL BACKGROUND

On May 11, 2016, Plaintiff Craig Shaw filed this action, asserting claims against the following five Defendants: 1) the City of Riverview; 2) the City of Riverview Retirement Board of Trustees; 3) Gary Chevillet; 4) Douglas Drysdale; 5) and MMRO.  Plaintiff has since dismissed all claims against MMRO.

Plaintiff filed a First Amended Complaint, as of right, on July 12, 2016.  (D.E. No. 20).  That First Amended Complaint includes the following counts that are asserted against the City, the Board, Chevillet, and Drysdale ("the Remaining Defendants"): 1) "Count I: Declaratory Relief (Unlawful Impairment of Contract)"; 2) "Count II: Declaratory Relief (Unlawful Taking)"; 3) "Count III: Declaratory Relief (Deprivation of Property Without Due Process"; 4) "Count IV: Violation of 42 U.S.C. § 1983) (As To Individual Defendants)"; 5) "Count V: Conspiracy To Violate Plaintiff's Federal Civil Rights (All Defendants)"; 6) "Count VI: Declaration of Rights (All Defendants)"; and 7) "Count VII: Writ of Mandamus."

The over-arching request for relief (First Am. Compl. at Pg ID 297) asked for this Court to order the following relief:

A.      Assume jurisdiction of this case;

B.      Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 declaring that the ordinance, as applied to plaintiff, violated plaintiff's rights protected by the United States and Michigan constitutions;

C.      Issue a permanent injunction barring defendants from revoking plaintiff's duty disability retirement;

D.      Award plaintiff money damages to make him whole for any loss and to restore him to the position he would have been in but for the constitutional violations;

       E.       Enter a money judgment against Riverview, Chevillet, and Drysdale, punitive damages in the amount of $376,092.36, plus interest, costs, attorney fees, and any other relief the Court deems just;

       F.       Award attorney fees and costs incurred in this action pursuant to 42 USC 1988 and/or any other provision of law; and

       G.       Issue such other relief as the Court deems just and equitable.

(*Id.*).

The Remaining Defendants filed a motion seeking to dismiss Plaintiff's First Amended Complaint. (D.E. No. 29).

After the parties had briefed the issues, Defense Counsel filed a supplemental brief, advising the Court that the Sixth Circuit had recently issued an opinion in a case with similar claims and issues, and asking the opportunity to submit supplemental briefing. (D.E. No. 38).

On September 20, 2016, this Court issued an order that provided that both Plaintiff and the Remaining Defendants could file supplemental briefs, addressing Counts I, II, and III of Plaintiff's First Amended Complaint, and the Sixth Circuit's decision in *Puckett v. Lexington-Fayette Urban Cty. Govt.*, 833 F.3d 590 (6th Cir. Aug. 15, 2016). (D.E. No. 39). Thereafter, the parties filed those supplemental briefs. (D.E. Nos. 43 and 48).

## STANDARD OF DECISION

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded factual allegations as true. *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544, 570 (2007).

For purposes of this motion, the Court may consider: 1) documents referenced in, or attached to, the complaint and central to the plaintiff's claims; 2) matters of which a court may properly take notice; and 3) public documents and records. *Devlin v. Kalm*, 531 F. App'x 697, 703 (6th Cir. 2013); *Costell v. Bank of New York Mellon*, 2013 WL 317746 (E.D. Mich. 2013); *Meyer v. Citimortgage, Inc*., 2012 WL 511995 (E.D. Mich. 2012).

## RELEVANT FACTUAL BACKGROUND

The City of Riverview ("the City") is a municipal corporation established pursuant to Mich. Comp. Laws § 117.1 *et seq.*  (Pl.'s Am. Compl. at ¶ 16).

The City of Riverview Retirement System is a retiree benefit plan available to eligible city employees that is administered and managed by a Board of Trustees ("the Board") and governed by the City's ordinances.  (*Id.* at ¶ 17; Exs. B & D to Defs.' Br.).  At all relevant times, Defendant Gary Chevillet ("Chevillet") has been the Chairmen of the Board and Defendant Douglas Drysdale ("Drysdale") has been the Treasurer of the Board. (Pl.'s Am. Compl. at ¶¶ 19-20).

Plaintiff was hired as a full-time utility worker by the City in 1992.  (*Id.* at ¶ 25).  By virtue of his employment, Plaintiff was a member of the system and was entitled to certain benefits, including retirement pension and disability benefits.  (*Id.* at ¶ 30-31).  The terms of Plaintiff's employment, including his compensation package and fringe benefits, are controlled by the local ordinances adopted by the City.  (*Id.* at ¶ 27).  At all relevant times, the City's ordinance has provided for a disability retirement in the event an eligible member becomes disabled while on duty.  (Defs.' Exs. B & C, § 2-351).

4

In January and February of 2009, Plaintiff sustained injury to his right shoulder during the course of his employment, which caused him to file an application with the Board for disability retirement.  (*Id.* at ¶ 32-33).

The version of the applicable City ordinance (§ 2-351) in effect at that time provided that "[u]pon the filing of a written application with the board by a member, or the city manager or his designee, a member who become permanently and totally incapacitated for their prescribed duty as a city employee, shall be retired by the board, if, and only if," certain conditions are met. (D.E. No. 29 at Pg ID 302-03).   The ordinances in effect at that time also provided, in pertinent part:

Sec. 2-359. - Conditions for disability retirants.

(a) ***Once each three years following the retirement of a member with a disability pension the board shall require any disability retirant, who has not attainted the age 55 years, to undergo a medical examination <u>to be made by or under the direction of a teaching medical facility having experts in the field of claimed disability.</u>*** Notwithstanding the provisions of this section, the board may accept an attending physician's certification of continued incapacitation where an on sight examination is not feasible.  If the retirant refuses to submit to the medical examination (or furnish certification) in any such period the retirant's disability, pension may be discontinued by the board until the retirant's withdrawal of such refusal. . . . ***If upon such medical examination of a retirant, the medical facility finds that the retirant is physically able and capable of resuming employment in the job held at retirement, the retirant's pension shall terminate*** and the retirant shall be returned to city employment in a pay grade not lower than the pay grade held at the time of retirement. If the retirant refuses to return to city employment in such vacancy, the retirant shall be considered separated from city employment and the retirant's interest in the retirement system shall be determined by the provisions of the retirement system ordinance at that time.

(D.E. No. 29 at Pg ID 305-06) (emphasis added).

It is undisputed that on July 1, 2010, the Board granted Plaintiff's application for a disability retirement.  (Pl.'s Am. Compl. at ¶ 36).

5

In December of 2015, the City amended § 2-359 to read:

> Sec. 2-359.  Conditions for disability retirants.
>
> (a)  ***Once every year following the retirement of a member with a disability pension or if circumstances warrant on a more often basis, the board shall require any disability retirant to undergo a medical examination to be made by or under the direction of the Medical Director or other Physician.***  The board may also require and accept an attending Physician's certification of continued incapacitation in addition to or in lieu of an examination by the Medical Director or other Physician. . . .
>
> (b)  If based upon a prior examination, or upon a medical examination of a retirant under this section, the retirant is able to: 1) resume employment in the City in any position which the City is then willing to offer, or 2) resume employment in the position held at retirement, a position available or offered after retirement, then the retirant's pension shall terminate and the retirant shall be returned to city employment . . .

(D.E. No. 318-19) (emphasis added).

MMRO is in the business of providing disability claims management services and medical reviews.  MMRO "is not a medical service provider nor is it a teaching medical facility."  (Pl.'s Am. Compl. at ¶¶ 22-23).  In 2015, the City and/or the Board contracted with Defendant MMRO "to perform medical examinations of city employees and retirees" and provide claims management services for the system. (*Id.* at ¶ 24).

In November of 2015, Plaintiff attended a medical examination "performed under the direction of Defendant MMRO and its Medical Director, Dr. Jeffrey Deitch, D.O., and conducted by Jon Zoltan, M.D., and employee or agent of Defendant MMRO."  (*Id.* at ¶ 42).  MMRO ultimately drafted a report to the Board, concluding that Plaintiff was not totally incapacitated from the performance of the duties of a Utility Service Worker nor a Land Preserve-Laborer. (*Id.* at ¶ 45).

MMRO's report was later submitted to the Board.  (*Id.* at 48).

6

Plaintiff "was invited to address the Board at its April 28, 2016, meeting concerning his continued retirement status." (*Id.* at ¶ 48). The meeting minutes from that Board meeting indicate that Plaintiff had sent a letter to the Board on March 19, 2016 requesting "a 30-day extension to provide medical records and to appear before the board." (Defs.' Ex. D).

Those meeting minutes further state that Plaintiff and his attorney addressed the Board regarding Plaintiff's disability re-examination. (Defs.' Ex. D). Those meeting minutes further state that "Medical records were supplied by Shaw's attorney, Alexander Gualdoni" and that Plaintiff's counsel argued that Plaintiff's "re-examination should follow the retirement ordinance at the time of his retirement, 7/2/10" and that Plaintiff "should not be re-examined under the newly revised ordinance." (*Id.*). The minutes reflect that the City's attorney stated that the Board would apply the revised ordinance, that the "Board's decision on continuance or termination of [Plaintiff's] duty disability retirement should be based upon Dr. Zoltan's 2016 examination report" and that Plaintiff's "own supplemental medical records identify conditions unrelated or subsequent to his original injury and are not relevant." (*Id.*).

Plaintiff alleges that, based solely on the report written by MMRO, the Board voted to revoke Plaintiff's disability retirement at the April 28, 2016 meeting. (*Id.* at ¶ 50).

**ANALYSIS**

**I.    Plaintiff's Unlawful Impairment Of Contract And Unlawful Taking Claims (Counts I & II)**

Although the case involved a different specific claimed contractual interest, the Court agrees with Defendants that the Sixth Circuit's decision in *Puckett* is instructive as to Plaintiff's Unlawful Impairment of Contract and Unlawful Takings claims, Counts I and II of Plaintiff's First Amended Complaint.

7

The plaintiffs in *Puckett* were retired public employees who claimed they had a contract with the State of Kentucky, by virtue of a state statute that governs their retirement fund, that entitled them to a specific cost of living adjustment ("COLA") formula that existed at the time they retired.  After the plaintiffs had retired, the statute was amended to provide for a reduced COLA formula.  *Id*. at 596-97.  The plaintiffs filed suit, claiming that the statutory amendment unconstitutionally altered the COLA increases they are entitled to receive, in violation of the Contract, Due Process, and Takings Clauses of the United States Constitution, as well as corresponding provisions in the Kentucky Constitution.  *Id*. at 597.

Upon motions to dismiss brought under Fed. R. Civ. P. 12(b)(6), the district court dismissed all three of those claims.  Specifically, the district court :

> found that the existence of a claimed contractual right for purposes of a Contract Clause claim requires a clear indication that the legislature intended such a contractual right, and the Kentucky legislature never bound itself to calculating retirement benefits based upon an unchangeable COLA. Finding no such enforceable contract, the district court dismissed the Contract, Due Process, and Takings Clause claims, and also dismissed the state law claims under the supplemental jurisdiction principles of 28 U.S.C. § 1367.

*Puckett*, 833 F.3d at 597-98.  In a published opinion, the Sixth Circuit affirmed.

## A.    Impairment Of Contracts Claim

The *Puckett* court first addressed the plaintiffs' claim that the statutory amendment constituted an unconstitutional impairment of contracts.  *Id*. at 599.  In doing so, it stated that the "starting point in this analysis is the Contract Clause, which provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1.  The Supreme Court, however, does not interpret this wording as an absolute bar on the impairment of either governmental or private contractual obligations."  *Id.* (citations omitted.).

8

Courts are to apply a two-part test to determine whether a state law violates the Contract Clause.  First, the court must ask whether the change in the state law has "operated as a substantial impairment of contractual relationship."  *Id*. at 599.  Second, if it does, then the court must determine whether the impairment is justified as "reasonable and necessary to serve an important public purpose."  *Id*. (citations omitted).

"Whether the state law is substantial impairment of a contractual relationship is analyzed in three parts: (1) whether there is a contractual relationship; (2) whether a change in law impairs the contractual relationship; and (3) whether the impairment is substantial."  *Id.* at 600.

### 1.    Existence Of A Contractual Relationship

The Sixth Circuit's analysis in *Puckett* began and ended at the first step of the analysis because it concluded "that Plaintiffs did not plead facts demonstrating the existence of a contractual relationship establishing a vested contract right."  *Id*. And since it found no contract, it did not need to reach the issues of impairment or substantiality.  *Id.*

The *Puckett* Court explained that "in order for a legislative enactment to be deemed a contract for the purposes of the Contract Clause, there must be a clear indication that the legislature intends to bind itself in a contractual manner."  *Id*. at 600.  That "presumption that a law is not intended to create private contractual rights is known as the 'unmistakability doctrine.'" *Id*.  The basic notion is that the indication that the legislative body that enacted the statute or ordinance intended to contractually bind itself must be "expressed in terms too plain to be mistaken." *Id.*

"To determine whether a legislature intended to bind itself contractually, courts examine both the language of the statute itself and the circumstances surrounding its enactment or

amendment – such as its apparent purpose, context, legislative history, or any other pertinent evidence of actual intent." *Id*. at 600-601 (citations omitted). The court explained that its role, under the circumstances of that case, was to "determine whether the Act evinces a clear intent on the part of the Kentucky legislature to create contractual rights against the modification of a specific COLA formula." *Id*. at 601. It also noted that "[i]t is the burden of the party asserting the contract to overcome the presumption that a law is not intended to create private contractual or vested rights." *Id*.

In applying that framework, the court explained that the issue came down to whether the plaintiffs "have a constitutionally protected contractual right to a specific COLA formula." *Id*. Like the district court, the Sixth Circuit did not "find any language within the Act, or anything in the legislative history, that would indicate any expression of intent by the legislature to create a contract. There is no provision in the Act that gives retirees an immutable lifetime entitlement to COLA increases in their public pensions under pre-2013 terms, much less with umistakeable clarity." *Id.* In other words, "[u]nder the unmistakability doctrine, Plaintiffs have the burden of showing that the Act contains an unmistakable promise precluding the Kentucky legislature from exercising its sovereign power to reduce the extent of their future COLA increases" and that plaintiffs failed to meet that burden. As a result, Plaintiffs did not state a claim for a violation of the Contract Clause. *Id*.

The same is true here.

As was the case in *Puckett,* the Court must focus on the narrow claim that Plaintiff is actually making. Like the plaintiff in *Puckett*, Plaintiff is *not* making a claim about whether his pension rights have vested or whether those rights guaranteed a specific level of income. *Puckett,*

33 F.3d at 601-02.  As in *Puckett,* "the issue here is more narrow than that."  *Id.*  Plaintiff's claims arise out of the termination of Plaintiff's *duty disability* benefits.  Unlike service retirement benefits, the disability benefits (under both versions of the ordinance) are expressly conditioned upon the member continuing to qualify as disabled.  That is why the ordinance provides for reexaminations.

The specific provision in the amended ordinance that Plaintiff takes issue with is the change in the type of physician who is to conduct disability reexaminations.  (*See, e.g.*, Pl.'s Br., D.E. No. 34 at Pg ID 405).  Under the ordinance in place when the initial disability determination as to Plaintiff's disability application was made, disability reexaminations were to be "made by or under the direction of a teaching medical facility having experts in the field of claimed disability."  (*Id.*; Pl.'s Am. Compl. at ¶ 39).  The amended ordinance provides that disability reexaminations are to be "made by or under the direction of the Medical Director or other Physician."  (*Id.* at 40).  Plaintiff alleges that change in the ordinance constitutes an unconstitutional impairment of contracts.  Accordingly, the issue here boils down to whether the ordinance amendment at issue, that changed the definition of the type of physician who is to conduct disability reexaminations, constitutes an unconstitutional impairment of contract.

In order to proceed with a Contract Clause claim, Plaintiff must meet his burden of overcoming the presumption that the Riverview ordinance is not intended to create private contractual or vested rights.

This Court's role is to determine whether the ordinance in effect at the time of Plaintiff's initial disability determination evinces a clear intent on the part of the local legislative body to create contractual rights against the modification of the type of physician who conducts a

11

disability reexamination for a member.

To determine whether a legislature intended to bind itself contractually, you look to the language of the ordinance itself. In addition, a plaintiff can also show that the circumstances surrounding the ordinance's amendment evidence that the legislative body intended to bind itself contractually. Here, however, Plaintiff has not identified any such circumstances, such as the amendment's apparent purpose, context, or legislative history. And Plaintiff has not pointed to any language in the ordinance itself that would support Plaintiff's position that the City forever bound itself to using a certain type of physician to conduct disability examinations of members.

The Court concludes that Plaintiff has not met his initial burden as to pleading the existence of a contractual relationship, this claim fails and the Court need not reach the issues of impairment or substantiality.

**B.     Unlawful Taking Claim**

Like the plaintiffs in *Puckett*, Plaintiff also alleges that the amendment to the ordinance constitutes an unconstitutional taking of his constitutionally protected property interests in violation of the Fifth Amendment.

"The Takings Clause of the Fifth Amendment prohibits taking 'private property . . . for public use, without just compensation." U.S. Const. amend. V. The clause applies to state governments through the Fourteenth Amendment." *Puckett*, 833 F.3d at 609.

In their Motion to Dismiss, the Remaining Defendants contend that Plaintiff's takings count must be dismissed for at least two reasons. First, they assert that this count is not ripe for review in this case because Plaintiff has come to federal court without first availing him of state procedures. (*See* D.E. No. 29 at Pg ID 244-45). Second, they assert that the claim fails because

12

Plaintiff cannot establish a contractual property right, for the reasons discussed above.  They also contend the takings clause fails for additional reasons.

The Court need not address all of the arguments raised by Defendants as to the takings count.

First and foremost, the claim is not ripe for review.  In a recent opinion, the Sixth Circuit explained that a "regulatory-takings plaintiff must satisfy two independent criteria to establish that his claim is ripe for review: finality and exhaustion." *Lilly Investments v. City of Rochester*, __ F. App'x __, 2017 WL 56754 (6th Cir. Jan. 5, 2017).   Finality requires the plaintiff to demonstrate that the decision-making body has reached a final decision regarding the application of the regulation at issue.  *Id.*  (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 186 (1985)).  "As to exhaustion, the plaintiff must 'seek compensation through the procedures the State has provided' before bringing suit in federal court."  *Id.*  The "primary justification for the state-litigation requirement is that 'state courts undoubtedly have more experience than federal courts do" in resolving the complex factual, technical, and legal questions relating to its own regulations.  *Id.* at * 6.  But the state-litigation requirement is not without exception. In *Lilly*, the plaintiff filed a complaint in state court asserting a takings claim under the regulation at issue.  The City then removed the action to federal court.  The Sixth Circuit concluded that the City, by removing the takings claim to federal court, waived the exhaustion requirement.  *Id.*

In responding to Defendants' argument that his takings claim is not ripe here, Plaintiff notes that his complaints have alleged that there is no administrative appeal process for the Board's decision and therefore the Board's decision is final.  (*See* D.E. No. 34 at Pg ID 408).

13

That goes to finality – the first requirement for ripeness.  But Plaintiff fails to address Defendants' argument that the claim is not ripe because of the state-litigation exhaustion requirement, because Plaintiff has not attempted to litigate his takings claim in state court before seeking to raise it in federal court.

Unlike the situation in *Lilly,* Plaintiff did not file an action in state court asserting a takings claim against the City that was then removed to federal court by the state defendant. Rather, Plaintiff filed the claim in federal court without having raised such a claim before the state court.   As such, Plaintiff's takings claim is not ripe.

## II.    Declaratory Relief, Deprivation Of Property Without Due Process (Count III)

Although the plaintiffs in *Puckett* asserted a due process claim, it was of a different nature than the one asserted here.  In *Puckett,* although it was "somewhat difficult to parse," the plaintiffs' compliant "essentially argue[d] that the legislature denied them the requisite due process of law, that is, notice and opportunity for a hearing, before amending the Act."  *Puckett*, 833 F.3d at 607.  In evaluating the claim the Sixth Circuit, like the district court, "assume[d] without deciding that Plaintiffs ha[d] a protected property interest implicating the Due Process Cause" and affirmed the dismissal of the plaintiffs' due process claim because the plaintiffs' complaint failed to allege how insufficient process was provided.  *Id*. at 607-08.

Here, Plaintiff's due process claim (Count III) is also difficult to parse.  Unlike *Puckett,* this claim does not appear to be based on lack of notice and opportunity to be heard before the ordinance was amended.  And unlike Counts I and II (the contract and takings claims), this claim does not appear to be based on the ordinance having changed the type of physician who conducts a disability reexamination.  Rather, it appears that Plaintiff is trying to assert that he had a

14

property interest in having his disability benefits continue unless the processes in the ordinances are followed and he is given an opportunity to present evidence to establish that he is still disabled.  Plaintiff alleges that he was not provided adequate notice of his right to present evidence to the Board and that he was denied access to the information the Board had from MMRO.

Like the Defendant in *Puckett,* the Remaining Defendants contend that Plaintiff has not established a protected property interest, and also argue that in any event, Plaintiff was provided all the process he was due.  (*See* D.E.  No. 29 at Pg ID 249-252; D. E. No. 36 at Pg ID 422).  But Plaintiff has alleged otherwise.  Thus, that argument is an evidence-based argument that cannot be resolved at the motion to dismiss phase.

Moreover, even Defendants acknowledge that "[t]here is little guidance from Michigan federal courts on the issue of whether an individual has a property interest in a duty disability pension benefit."  (D.E. No. 29 at Pg ID 249 n.5).

As a result, the Court shall allow this claim to proceed.  Defendants may renew their arguments at the summary judgment phase.

**III.  Violation Of § 1983 Count Against Individual Defendants (Count IV) Does Not Assert Any Additional Claims  – But The Court Will Address The Individual Defendants And Their Defense Of Qualified Immunity.**

Count IV of Plaintiff's First Amended Complaint is titled "Violation of 42 U.S.C. § 1983 (As to Individual Defendant).  The body of that count, however, does not set forth any specific violation of Plaintiff's constitutional rights. Plaintiff has indicated to the Court (D.E. No. 34 at Pg ID 411) that count is simply intended to allow him to assert 1983 claims against Defendants based on the alleged violations in Counts I, II, and III.  This is therefore not a substantive count

to be analyzed.

Nevertheless, the Court must address the claims against the two individual Defendants, Chevillet and Drysdale.  Plaintiff has sued those two individuals in both their official and individual capacities.  (*See* caption of First Am. Compl.).

To the extent that Plaintiff sues Chevillet and Drysdale in their official capacities, that is, in substance, a claim against the Board, which is already a party to the case.

To the extent that Plaintiff seeks to assert § 1983 claims against Chevillet and Drysdale in their individual capacities, they are entitled to assert the defense of qualified immunity and they did so in their Motion to Dismiss.  (*See* D.E. No. 29 at Pg ID 255-257).

Defendants' brief notes that Plaintiff's complaint does not contain any factual allegations as to any wrongful conduct by either Chevillet or Drysdale.

All the complaint alleges is that the "Individual Defendants have acted under color of law by enforcing the city ordinances" (*Id*. at ¶ 77) and voted against Plaintiff's initial disability application (*Id*. at ¶ 72)

Under the doctrine of qualified immunity, governmental officials such as Chevillet and Drysdale are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights.  *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was "clearly established" at the time of the violation.  *Harris v. City of Circleville,* 583 F.3d 356, 365 (6th Cir.

16

2009).

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The Supreme Court, however, has reiterated that questions of qualified immunity should be resolved at the earliest possible stage in the litigation or the "driving force" behind the immunity – avoiding unwarranted discovery and other litigation costs – will be defeated." *Everson v. Leis*, 556 F.3d 484, 492 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223).

"Qualified immunity is an affirmative defense, and a defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). But once a defendant had raised a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate" both that the challenged conduct violated a constitutional right and that the right was clearly established. *Id*. "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*

Under the "clearly established" inquiry, the question is whether the right was so clearly established that a reasonable official would understand that what he or she is doing violates the law. *Jones v. Byrnes*, 585 F.3d at 975. "The essential inquiry is whether the defendant had fair warning that his [or her] actions were unconstitutional." *Hensley v. Gassman*, 693 F.3d 681, 693–94 (6th Cir.2012). This inquiry must be undertaken in the consideration of the specific context of the case, not as a broad proposition. *Jones,* 585 F.3d at 975.

In order to make such a showing, Plaintiff needs to direct the Court to a case wherein a similar legal and factual scenario as that presented here was found to have resulted in a constitutional violation. *Bray, supra*. Plaintiff has not even attempted to identify such a case.

17

In response to Defendants Chevillet and Drysdale having raised the defense of qualified immunity in their Motion to Dismiss, Plaintiff's only response was, in its entirety:

> Again, defendants essentially premise their argument on the lack of a constitutional violation. This position is without merit, as described above.
> Moreover, it should have been clear to the individual defendants that the retroactive application of law and withholding of evidence would violate plaintiff's rights. Therefore, the individual claims are valid on their face.

(D.E. No. 34 at Pg ID 412).

As a result, Defendants Chevillet and Drysdale are entitled to qualified immunity as to any claims asserted against them in their individual capacity.

## IV.   Conspiracy To Violate Plaintiff's Federal Civil Rights (Count V)

Plaintiff's conspiracy count, which indicates it is asserted against all Defendants, consists of two sentences:

87.   Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.

88.   Plaintiff further states that Defendants Chevillet and Drysdale with other Riverview agents, officers, or employees and MMRO conspired to deprive plaintiff of his property without due process of law as more fully described herein.

(First Am. Compl. at 16).

Defendants assert that the conspiracy count must be dismissed because Plaintiff's First Amended Complaint does not allege even the elements of a conspiracy claim, and also lacks any factual allegations as to the claimed conspiracy. The Court agrees.

To prove a § 1983 conspiracy, a plaintiff must show: 1) an agreement between two or more persons to injure another by unlawful action; 2) participants shared in the general conspiratorial objective; 3) an overt act was committed in furtherance of the conspiracy; and 4)

18

the complainant was injured as a result of the act.  *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

And even before *Twombly*, it was "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  Plaintiff has failed to plead a § 1983 conspiracy claim against the Remaining Defendants because his First Amended Complaint lacks factual allegations to the alleged conspiracy.

## V.      Declaration Of Rights (Count VI)

The Court notes that the Remaining Defendants' brief challenged Plaintiff's Declaration of Rights claim (Count VI) in passing, and that Plaintiff's brief did not address that count. Defendants' have not persuaded the Court that this count should be dismissed in connection with their pending Motion to Dismiss.

## VI.      Writ Of Mandamus (Count VII)

Count VII is titled "Writ of Mandamus" and states that it is asserted against the City and the Board.  The authority cited within the body of the count, is a state-law case that discusses the rare and extraordinary nature of this relief.  That is, it "only lies when there is practically no other remedy."  *Board of County Road Comm'r's of Oakland Cty.*, 79 Mich. App. 505, 508 (1978).  If Plaintiff has other remedies he can pursue – such as his due process claim in this action and/or a declaration of rights count – then he cannot pursue a writ of mandamus.

Moreover, even if Plaintiff lacked other remedies, the Court would dismiss this Count because, under Plaintiff's own authority, "[m]andamus only lies when there is a clear legal duty

19

incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty"
and "[t]he specific act sought be compelled must be of a ministerial nature, that is, prescribed
and defined by laws with such precision and certainty as to leave nothing to the exercise of
discretion or judgment." *Id.* at 509.

Accordingly, the Court shall dismiss this count.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the Motion to Dismiss filed by the
Remaining Defendants is GRANTED IN PART AND DENIED IN PART.  The motion is
GRANTED to the extent that the Court DISMISSES Counts I, II, IV, V, and VII of Plaintiff's
First Amended Complaint WITH PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 8, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on
March 8, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager

20