Craig Shaw,

       Plaintiff / Counter-Defendant,

v.                                 Case No. 16-11693

The City of Riverview, *et al.*,             Sean F. Cox
                                  United States District Court Judge

       Defendants / Counter-Plaintiffs,
_____/

## OPINION & ORDER

After his duty-disability retirement was terminated, Plaintiff Craig Shaw filed this action

against the City of Riverview, its Retirement Board, and two individuals on the Board, asserting

several claims. Only two of Shaw's claims remain in this action. The Board filed counterclaims

against Shaw and those counterclaims are the subject of this Opinion & Order. The parties filed

cross-motions pertaining to the counterclaims asserted against Shaw. Those motions were

briefed by the parties and the Court heard oral argument on December 6, 2018. As explained

below, the Court shall dismiss the disputed counterclaims against Shaw, because the Board

failed to sufficiently plead either a silent fraud or a fraudulent misrepresentation claim against

Shaw under Michigan law.

## BACKGROUND

Acting through counsel, Plaintiff Craig Shaw filed this action on May 11, 2016, based

upon both federal-question jurisdiction and diversity jurisdiction.

Shaw's original complaint asserted claims against five Defendants: 1) the City of

Riverview, 2) the City of Riverview Retirement Board of Trustees, 3) Gary Chevillet,4)  Douglas

Drysdale, and 5) Managed Medical Review Organization, Inc.

At this juncture, following an amended complaint and multiple motions to dismiss, Shaw has the following two claims remaining in this action, asserted against the City and the Board: 1) "Declaratory Relief (Deprivation Of Property Without Due Process)" (Count III of Shaw's First Amended Complaint); and 2) "Declaration of Rights" (Count VI of Shaw's First Amended Complaint).

In addition, the Board has asserted the following state-law counterclaims against Shaw, which are currently pending: 1) "Silent Fraud" (Count I); 2) "Fraudulent Misrepresentation" (Count II); and 3) "MCL 600.2919a" (Count III).

Discovery has closed and the matter is now before the Court on dispositive motions relating to the counterclaims. In a motion seeking summary judgment filed as ECF Number 89, the Board seeks summary judgment in its favor as to all three of its counterclaims against Shaw. In a Motion for Judgment on the Pleadings and/or for Summary Judgment, filed as ECF Number 93, Shaw seeks judgment in his favor as to the three state-law counterclaims asserted against him.

**ANALYSIS**

The Board asserted three counterclaims against Shaw in this action: 1) "Silent Fraud" (Count I); 2) "Fraudulent Misrepresentation" (Count II); and 3) "MCL 600.2919a" (Count III). The Board filed its own summary judgment motion, asking the Court to grant summary judgment, in its favor, as to all three of those counterclaims.

In his motion, Shaw challenges all three of those counter-claims and his challenges include challenges to the sufficiency of the pleadings. The Court shall therefore address this

motion first.

In responding to Shaw's motion challenging the Board's counterclaims, the Board

abandoned Count III. (*See* Defs.' Resp. Br. at 21) (stating that the "Board abandons its claim for

statutory conversion"). As such, the Court shall dismiss that count with prejudice.

That leaves the Board's silent fraud and fraudulent misrepresentation counterclaims.

Shaw's motion contends that he is entitled to judgment on the pleadings as to both claims and,

additionally, that he is also entitled to summary judgment on those claims for lack of evidence

that could support them. The Court need not address all of Shaw's arguments, however, as the

Board's Countercomplaint fails to sufficiently plead its fraud counterclaims against Shaw.

"After the pleadings are closed – but early enough not to delay trial – a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). As explained by the Sixth Circuit:

> "[A]ll well-pleaded material allegations of the pleadings of the opposing party
> must be taken as true, and the motion may be granted only if the moving party is
> nevertheless clearly entitled to judgment" as a matter of law. *JPMorgan Chase
> Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *S. Ohio
> Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir.
> 1973)). To survive a Rule 12(c) motion, "a complaint must contain direct or
> inferential allegations respecting all the material elements under some viable legal
> theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336
> (6th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173
> L.Ed.2d 868 (2009) ("[A] complaint must contain sufficient factual matter,
> accepted as true, to 'state a claim to relief that is plausible on its face.' A claim
> has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged." (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550
> U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))).

*Hindel v. Husted*, 875 F.3d 344, 346-47 (6th Cir. 2017).

In addition, as Shaw notes in his motion, the two remaining counterclaims are *fraud

claims* that are subject to a *heightened pleading standard*.

When alleging fraud, a party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). To satisfactorily allege fraud, the complaint must: 1) specify the statement(s) that the plaintiff contends were fraudulent; 2) identify the speaker; 3) state where and when the statements were made; and 4) explain why the statements were fraudulent. *Indiana State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009). In addition, the plaintiff must allege the time, place, and content of the alleged misrepresentation on which it relied; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud. *Bennett*, 607 F.3d at 1100.

## A. Silent Fraud

Count I of the Board's Countercomplaint asserts a "silent fraud" claim under Michigan law. That count incorporates the prior allegations in the Countercomplaint and then alleges, *in its entirety:*

> 47. Shaw, at 49 years of age, was granted a duty-disability retirement through the Retirement Board of Trustees in accordance with Riverview's Retirement Ordinance and authority of the Board on July 1, 2010.
> 48. Under Section 2-354(1) of the Ordinance, Shaw shall receive a disability pension equal to one-half of the member's final average earnings.
> 49. Under Section 2-359 of the Ordinance, Shaw is given service credit for the period of time he was in receipt of the disability pension.
> 50. Section 2-354(2) of the Ordinance states "upon attaining age 55, or on the 25th anniversary of a member's employment, whichever occurs last, the retirant shall have his pension computed, according to Section 2-319."
> 51. Shaw was fully aware that his disability pension would be discontinued when his 2010 disability ceased.
> 52. [The Board's] video surveillance of Shaw on March 10, 2015, mowing his front lawn and lifting weights at a nearby gym establishes that his 2010 disability ceased.
> 53. [The Board's] video surveillance of Shaw on March 12, 2015, grocery shopping and lifting weights at a nearby gym establishes that his 2010 disability ceased.

54.     [The Board's] video surveillance of Shaw on April 17, 2015 and again on April 18, 2015, also disclosed Shaw at an Arizona Golf course teeing off with a driver.

55.     On all of the foregoing occasions, Shaw had full range of motion and use of his right shoulder and did not display any signs of pain or discomfort.

56.     On and after the dates he was captured on video surveillance, he continued to receive the disability pension benefits granted to him through Riverview's Retirement Ordinance, even though he was no longer disabled.

57.     *Shaw had a duty to disclose to [the Board] that he was no longer eligible to receive a disability pension under the Retirement Ordinance as he was no longer disabled,* and was playing Golf in the Arizona sunshine without limitation.

58.     *Shaw failed to disclose to [the Board] that he was no longer eligible to receive a disability pension under the Retirement Ordinance as he was no longer disabled.*

59.     Shaw's *failure to disclose the fact that he was no longer disabled created a false impression for [the Board] who unwittingly continued to pay Shaw.*

60.     Shaw knew that if he disclosed his non-disabled status to [the Board], the Board would discontinue his disability pension and Shaw would have to move from Arizona back to Michigan to resume his employment with Defendant Riverview.

61.     As a result of *Shaw's failure to disclose the fact that he was longer disabled,* [the Board] continued to pay Shaw a disability pension which Shaw was no longer eligible to receive.

62.     [The Board] would not have continued to pay Shaw his disability pension had Shaw disclosed the fact that he was no longer disabled.

63.     As a result of *Shaw's failure to disclose that he was no longer disabled,* [the Board] suffered substantial economic losses.

64.     Upon information and belief, [the Board] believes *Shaw's disability abated shortly after he moved to Arizona, and his silent fraud began at that time*.

(Countercomplaint at 10-12) (emphasis added).

"To prove silent fraud" under Michigan law, "also known as fraudulent concealment, the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure." *Lucas v. Awaad*, 299 Mich. App. 345, 363-64 (2013). "A plaintiff cannot merely prove that the defendant failed to disclose something; instead, 'a plaintiff must show that some type of representation by words or actions

that was false or misleading and was intended to deceive.'" *Id*. (quoting *Roberts v. Saffell*, 280 Mich. App. 397, 403-404 (2008)).

Shaw makes numerous challenges to the Board's silent fraud counterclaim in his motion, including that the Board has failed to sufficiently plead a silent fraud claim under Michigan law. Shaw asserts that, among other things, the Board: 1) fails to allege any type of representation by Shaw, by words or actions, that was false or misleading; and 2) fails to allege any facts that would establish any source of a legal or equitable duty to disclose.

### 1. Failure To Allege Any Type Of Representation By Shaw That Was False Or Misleading

Shaw asserts that the Board's countercomplaint does not contain any allegations as to Shaw having made a representation to the Board:

> Here, the counter-complaint is devoid of any allegation that Shaw made a representation to the Board, the [party asserting this silent fraud claim], that was intended to deceive (Counter-Complaint, ¶¶ 1-64). Rather, the Board only alleges in ¶64 that Shaw's silent fraud "began" "shortly after he moved to Arizona," implying that it is ongoing. This allegation fails to identify any discrete representations upon which a claim of silent fraud may be founded.

(Shaw's Br. at 7). Shaw asserts that dismissal is therefore warranted under Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 9(b), which requires fraud to be pled with particularity.

Trying to anticipate the Board's response, Shaw asserts that to the extent that the Board may claim that Shaw's actions in performing various daily activities are the alleged "representations" made by Shaw, that argument should be rejected for multiple reasons. But the Board did not make such arguments.

In its motion seeking summary judgment on the silent fraud counterclaim, the Board asserted in its opening brief – consistent with the allegations in its Countercomplaint – that

6

"Shaw failed to disclose a material fact that he actually knew. That he was no longer disabled."

(Board's SJ Br. at 18). After Shaw challenged the viability of such a claim, however, the

Board's Reply Brief in support of its summary judgment motion appeared to acknowledge that it

cannot proceed with a silent fraud claim based upon his alleged failure to disclose that he was

not disabled:

> The Board sympathizes with the analysis in Shaw's Response, to the effect that
> the Board's argument is solely based on the claim that Shaw knew he was
> disabled and should have reported that disability and that this does not meet the
> requirements of silent fraud. But that analysis ultimately ignores the other clear
> arguments asserted in both the Board's Motion and Response, (Documents 89 and
> 99), regarding the material misrepresentation Shaw made to Dr. Zoltan about golf,
> weightlifting and general athleticism. Whatever Shaw knew or didn't know about
> his disability, is not relevant to the elements of silent fraud.

(ECF No. 106 at PageID 3542).

At the hearing, counsel for the Board expressly acknowledged that the Board has not

alleged a viable silent fraud claim against Shaw by virtue of having alleged that he failed to

disclose that he was no longer disabled.

In opposing Shaw's motion, the Board now contends that the representations that support

its silent fraud claim are some unidentified representations, or maybe omissions, that Shaw made

to a doctor (Dr. Zoltan) who performed a medical evaluation of him.

The Board's position is entirely without merit. Although these are fraud claims – *that*

*must be pleaded with particularity* – the Board asserts that "[s]ome the elements [of silent fraud]

the Board alleged directly, and others by reasonable inference." The Board then argues that

because somewhere in its countercomplaint it referred to an examination of Shaw by Dr. Zoltan

with MMRO, its "counter complaint reasonably infers" that Shaw's alleged misrepresentations

arose during that medical examination. (Board's Resp. Br. at 5). The absurdity of this argument

7

is apparent from the following paragraph of the Board's response:

> It is the Board's position that paragraphs 32, 40 and 42 are direct allegations that MMRO and Dr. Zoltan conducted the physical examination of Shaw. Moreover, paragraph 42 states that Shaw was no longer disabled as a result of both the medical examination and the investigation. This clearly *infers that something stated by Shaw or withheld by Shaw or misrepresented by Shaw* during the medical examination with Dr. Zoltan (conducted on behalf of MMRO and having been retained by the Board) to conduct such an examination, was misrepresented by Shaw.

(*Id*. at 6) (emphasis added).

The silent fraud claim actually alleged by the Board is only that: 1) Shaw "had a duty to disclose to [the Board] that he was no longer eligible to receive a disability pension under the Retirement Ordinance as he was no longer disabled," and 2) "Shaw failed to disclose [to the Board] that he was not longer eligible to receive a disability pension under the Retirement Ordinance as he was no longer disabled." (Countercomplaint at 11). Even the Board now acknowledges that such a claim fails under Michigan law.

There are no allegations in the Board's countercomplaint, much less allegations plead with particularity, that would give Shaw notice that the silent fraud claim asserted against him is based upon his having made a representation or omission, to Dr. Zoltan, during a medical examination. The Court shall dismiss the Board's Silent Fraud counterclaim with prejudice.

### B.     Fraudulent Misrepresentation

Count II of the Board's Countercomplaint asserts a claim for "Fraudulent Misrepresentation" under Michigan law. That count incorporates the prior allegations in the Countercomplaint and then alleges, *in its entirety:*

66.     Shaw was granted a duty-disability retirement through the Retirement

Board of Trustees in accordance with Riverview's Retirement Ordinance and authority of the Board on July 1, 2010.

67. Since that time, Shaw has been receiving monthly pension checks from the Board.

68. Every month, Shaw would cash the checks, or endorse the checks or draw funds from the checks received from Defendant/Counter-Plaintiff instead of returning them to Defendant/Counter-Plaintiff.

69. *That by cashing the monthly checks, or endorsing them or drawing funds from them and not returning them, Shaw represented to the Board that he was disabled.*

70. Shaw is no longer disabled and therefore no longer eligible to receive the disability pension benefits granted to him through Riverview's Retirement Ordinance.

71. The video surveillance of Shaw on March 10, 2015, mowing his front lawn and lifting weights at a nearby gym establishes that his 2010 disability ceased.

72. The video surveillance of Shaw on March 12, 2015, grocery shopping and lifting weights at a nearby gym establishes that his 2010 disability ceased.

73. The video surveillance of Shaw of April 17, 2015, and again on April 18, 2015, also disclosed Shaw at an Arizona Golf course teeing off with a driver.

74. On all of the foregoing occasions, Shaw had full range of motion and use of his right shoulder and did not display any signs of pain or discomfort.

75. On and after the dates he was captured on video surveillance, he continued to receive the disability pension benefits granted to him through Riverview's Retirement Ordinance, even though he was no longer disabled.

76. Shaw was fully aware that his disability pension would be discontinued when his 2010 disability ceased.

77. Shaw knew that he was no longer disabled and therefore no longer eligible to receive the disability pension benefits granted to him through Riverview's Retirement Ordinance.

78. Shaw knew that if the Board discontinued his disability pension, Shaw would have to move from Arizona back to Michigan to resume his employment with Defendant Riverview.

79. As a result of Shaw's cashing the monthly checks, or endorsing them or drawing funds from them and not returning them to the Board, the Board continued to pay Shaw a disability pension which Shaw was no longer eligible to receive.

80. The Board would not have continued to pay Shaw his disability pension had *Shaw not falsely represented to the Board that he was disabled by cashing the monthly checks, or endorsing them or drawing funds from them.*

81. As a result of *Shaw's misrepresentation that he was disabled*, the Board

9

suffered substantial economic losses.

82.     *Upon information and belief, the Board believes Shaw's disability abated shortly after he moved to Arizona, and his fraudulent misrepresentation began at that time.*

WHEREFORE, Defendant/Counter-Plaintiff respectfully requests that this Court enter judgment against Shaw for compensatory damages in an amount to be determined at trial, punitive damages, attorney fees and costs, and any and all other relief the Court deems necessary and proper to which Defendant/Counter-Plaintiff is entitled.

(Bd.'s Countercomplaint at 13-15) (emphasis added).

Accordingly, the Board's countercomplaint alleges that Shaw falsely represented to the Board that he was disabled, by virtue of having cashed or deposited monthly pension checks sent to him. And it alleges that Shaw's fraudulent misrepresentations began when he moved to Arizona, which was in 2010.[1] (Countercomplaint at ¶¶ 11, 12 & 82).

"Under Michigan law, to prove that a defendant committed fraudulent misrepresentation, a plaintiff must prove six elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, [he] knew that it was false, or made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation." *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 662 (6th Cir. 2013). "An additional requirement for element five" is that the plaintiff's "reliance on the alleged misrepresentation must have been reasonable." *Id*. at 662-63.

Most notably, an "action for fraudulent misrepresentation must be predicated upon a

_____

[1]As Shaw notes in his Reply Brief, that was *years before* he was examined by Dr. Zoltan. (Pl.'s Reply Br. at 3).

*statement* relating to a past or existing *fact*." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (emphasis added).

Shaw's motion asserts that the Board has failed to plead a fraudulent misrepresentation claim under Michigan law because, among other things, the Board does not allege that Shaw made a material misrepresentation of any fact to the Board. Shaw contends that the Board fails to state a fraudulent misrepresentation claim under Michigan law because his endorsement or cashing of a check made payable to him does not constitute a factual representation regarding his disability or physical condition.

In support of his position, Shaw directs the Court to *Whited v. Motorists Mut. Ins.*, wherein the Honorable Victoria Roberts ruled that the defendant insurance company failed to state a fraudulent misrepresentation claim under Michigan law where the insurer asserted that a person made a material misrepresentation about attendant care services provided by her by virtue of endorsing checks sent to her. *Whited v. Motorists Mut. Ins.*, 2010 WL 3862717 at * 38 (E.D. Mich. 2010).

Shaw further directs the Court to *Williams v. United States*, 458 U.S. 279, 284 (1982), wherein the United States Supreme Court expressed, albeit in a different context, the notion that the act of depositing a check does not involve the making of a false statement, for a simple reason: technically speaking, a check is not a factual statement at all, and therefore cannot be characterized as true or false.

In its own Motion for Summary Judgment pertaining to the counterclaims, the Board certainly appeared to be basing its fraudulent misrepresentation claim against Shaw on the check-cashing theory. (*See* ECF No. 89 at PageID 1209) (Arguing that "Shaw's monthly receipt

11

of and affirmative use of his disability benefit after March 12, 2015, was a material

representation to the City that he was still disabled" and asserting that "representation was

false.").

At the hearing, however, counsel for the Board acknowledged that the Board has not

alleged a viable fraudulent misrepresentation claim by virtue of its check-cashing theory.

The Board has changed its position and now asserts that its fraudulent misrepresentation

claim is actually is based upon some unspecified statements that Shaw made to Dr. Zoltan during

a medical examination.  (Bd.'s Resp. Br. at 8-9) (*See also* Bd.'s Reply Br., ECF No. 106, at

PageID 3545) (stating that its "fraudulent misrepresentation motion is not based on cashing

checks, but rather on a theory of Shaw making representations to Dr. Zoltan.")

The Board's position, once again, is without merit and is rejected.

The Board is required to plead its fraudulent misrepresentation claim *with particularity*,

which requires the Board's countercomplaint to: 1) specify the statements that the plaintiff

contends were fraudulent; 2) identify the speaker; 3) state where and when the statements were

made; and 4) explain why the statements were fraudulent.  *Indiana State Dist. Council of

Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009).  In addition the plaintiff must

allege the time, place, and content of the alleged misrepresentation.

Here, the Board's countercomplaint does not allege the time, place, or content of any

fraudulent statements that Shaw made to Dr. Zoltan.  Accordingly, to the extent that the Board

asserts that it can proceed with a fraudulent misrepresentation claim against Shaw that is based

upon some statement that Shaw made during the course of an examination by Dr. Zoltan, that

argument fails.  No such claim was pleaded.

The Court shall dismiss Count II with prejudice.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that: 1) Shaw's Motion for Judgment on the Pleadings and/or for Summary Judgment as to the Counterclaims (ECF No. 93) is GRANTED; 2) the Board's Summary Judgment Motion as to the counterclaims (ECF No. 89) is DENIED; and 3) all three Counterclaims asserted against Shaw in this action are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: December 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager