UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Craig Shaw,

        Plaintiff,

v.                           Civil Action No. 16-11693

City of Riverview, *et al.*,       Sean F. Cox
                               United States District Court Judge

        Defendants.

_____/

## OPINION & ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case is currently before the Court on Defendants' Motion for Summary Judgment,

that challenges Plaintiff's two remaining claims in this action. The motion has been fully briefed

by the parties and the Court orders that the motion shall be decided without a hearing. Local

Rule 7.1(f). As explained below, the Court shall deny the motion as to Plaintiff's procedural due

process claim. This Court declines to exercise jurisdiction over Plaintiff's declaration of rights

count because doing so will not fully settle the controversy, given that Plaintiff has since filed

another action in state court seeking additional, and related, declaratory relief.

### BACKGROUND

Plaintiff Craig Shaw ("Shaw") filed this action on May 11, 2016. Shaw's original

complaint asserted claims against five Defendants: 1) the City of Riverview ("the City"), 2) the

City of Riverview Retirement Board of Trustees ("the Board"), 3) Gary Chevillet, 4) Douglas

Drysdale, and 5) Managed Medical Review Organization, Inc. ("MMRO").

At this juncture, following an amended complaint and multiple motions to dismiss, Shaw

has the following two claims remaining in this action, asserted against the City and the Board: 1) "Declaratory Relief (Deprivation Of Property Without Due Process)" (Count III of Shaw's First Amended Complaint); and 2) "Declaration of Rights" (Count VI of Shaw's First Amended Complaint).

In Count III of Shaw's First Amended Complaint, titled "Declaratory Relief (Deprivation of Property Without Due Process)," Shaw asserts a claim that he was deprived of property without due process of law. More specifically, Shaw alleges that he "has a property right in the continuation of his duty disability retirement and the other benefits afforded him under the City's retirement System, and defendants are prohibited from depriving [him] of that property absent due process of law." (Am. Compl. at ¶ 67). Shaw alleges that while he was afforded the opportunity to address the Board at its scheduled meeting, the hearing was not meaningful and did not comport with the constitutional-minimum due process protections for a number of reasons." (*Id*. at ¶ 70).

In Count VI of Shaw's First Amended Complaint, titled Declaration of Rights, he alleges as follows:

89. Plaintiff incorporates by reference all paragraphs set forth above as though fully set forth herein.
90. On the effective date of his duty-disability retirement, July 1, 2010, Plaintiff's rights in his duty-disability retirement vested under the Ordinance in Effect at that time to wit: (1) prior to reaching 55 years old, he could only be subjected to a medical examination once every three years; (2) those examinations were to be conducted by or under the direction of a teaching hospital with specialists in the field of claimed disability; and (3) he is no longer subject to examinations having reached 55 years of age.
91. Riverview passed certain amendments to the Retirement Ordinances in December of 2015. Riverview Ordinance 679.
92. These amendments contain no language to indicate any retroactive effect. See id.

93. Ordinances are reviewed in the same fashion as statutes. Bonner v. City of Brighton, 848 N.W.2d 380, 388 (Mich. 2014); cert den sub nom. Bonner v. City of Brighton, Mich., 135 S. Ct. 230; 190 L. Ed. 2d 134.

94. Michigan courts do not give retroactive effect to statutes that do not contain clear, unequivocal expressions of legislative intent for retroactivity. Davis. v. State Employees' Ret. Bd. 725 N.W.2d 56, 60 (Mich. Ct. App. 2006).

95. Because there is no language of retroactivity in the December 2015 Amendments, Plaintiff's duty-disability retirement is subject to the Retirement Ordinance as it existed on July 1, 2010; specifically as stated in ¶ 21, above.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order declaring that his rights pursuant to his duty-disability retirement vested fully when said retirement was awarded; that his duty-disability retirement remains unaffected by the 2015 Amendments to the Riverview Retirement Ordinance; and that Plaintiff can no longer be subjected to medical examinations.

(Am. Comp. at 16-17).

Discovery in this case has closed. Defendants now seek summary judgment in their favor as to Shaw's remaining two claims. Shaw opposes that motion.

This Court's practice guidelines, which are expressly included in the Scheduling Orders issued in this case, provide, consistent with Fed. R. Civ. P. 56, provide in pertinent part that:

a. The moving party's papers shall include a separate document entitled **Statement of Material Facts Not in Dispute**. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. The Statement shall include all necessary material facts that, if undisputed, would result in summary judgment for the movant.

b. In response, the opposing party shall file a separate document entitled **Counter-Statement of Disputed Facts.** The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

      c.      All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

      d.      The statements shall be non-argumentative and avoid the use of color words or distortions of the record in a party's favor. Conclusory, speculative, or conjectural statements in support of a position shall be avoided.  Hearsay statements and other inadmissible evidence cannot be considered.

      e.      Facts stated in the Statement of Material Facts Not In Dispute and Counter-Statement of Disputed Facts shall be supported with appropriate citations to the record, including but not limited to the pleadings, interrogatories, admissions, depositions, affidavits and documentary exhibits.  Citations to the record must be **specific**, *ie.*, cite to a discrete page or portion of deposition testimony or page(s) of documentary evidence, not simply the entire deposition or document . . . .

(ECF No. 61 at PageID 794 & 796-97).

Along with Defendants' motion, they filed a Statement of Material Facts Not in Dispute ("Bd.'s Stmt.").  Along with his response, Shaw filed a Counter-Statement ("Shaw's Stmt.").

The following material facts are either undisputed, or are gleaned from the evidence submitted by the parties, *viewed in the light most favorable to Shaw, the non-moving party*.

**The City's Retirement Ordinances**

The City of Riverview Retirement System is a retiree benefit plan available to eligible City employees that is administered and managed by a Board of Trustees ("Retirement Board" or "Board") and governed by provisions of the City's ordinances.  (Bd.'s & Shaw's Stmts. at ¶ 1) (*see also* Ex. A to Bd.'s Motion, Retirement Ordinance in effect at time of Plaintiff's disability retirement ("Original Ordinance"); Ex. B, "Amended Ordinance").

The Retirement Ordinance vests the Board with the "authority and responsibility for the

administration, management, and operation of the Retirement System," and also charges the Board with the duty of "carrying into effect the provisions of the Retirement System" and doing "all things necessary to carry on the day-to-day operation of the Retirement System. . . ." (Bd.'s & Shaw's Stmts. at ¶ 2); Bd.'s Ex. A, §§ 2-266, 2-274; Ex. B, §§ 2-266, 2-274).

Eligible members of the Retirement System may voluntarily retire and obtain pension benefits after either completing 25 years of credited service and attaining age 55, or after attaining age 60. (Bd.'s & Shaw's Stmts. at ¶ 3; Bd.'s Ex. A, § 2-316; Ex. B, § 2-316).

The Ordinance provides a mechanism through which an eligible member of the Retirement System may obtain a disability pension in the event the eligible member becomes disabled while on duty, and any eligible member who becomes permanently and totally incapacitated from duty-connected causes can apply for a duty disability pension. (Bd.'s & Shaw's Stmts. at ¶ 4; Bd.'s Ex. A, § 2-351; Ex. B, § 2-351).

Individuals who are granted duty disability pensions but have not yet attained the age of 55 are required to undergo medical evaluations to ensure their continued incapacitation to perform their job. (Bd.'s & Shaw's Stmts. at ¶ 5; Bd.'s Ex. A, § 2-359; Ex. B, § 2-359).

Both versions of the Ordinance (the Original Ordinance and the Amended Ordinance) provide for the termination of a duty disability requirement pension in the event that a medical evaluation finds that the recipient is no longer permanently and totally incapacitated for a specified position or positions.

Under both versions of the Ordinance, the City Attorney serves as legal advisor to the Board. (Bd.'s Ex. A, § 2-275; Bd.'s Ex. B, § 2-275). It appears that the City Attorney at all relevant times was Kerry Morgan, who is also representing the Board in this action.

In December of 2015, the Retirement Ordinance was amended by the City Council for the City of Riverview. The amendment process began in or around 2013. (Bd.'s & Shaw's Stmts. at ¶¶ 7-8).

**Section 2-359 Of Original Ordinance**

Prior to its 2015 amendment, Section 2-359 of the Original Ordinance provided as follows:

Sec. 2-359. - Conditions for disability retirants.

(a) Once each three years following the retirement of a member with a disability pension the board shall require any disability retirant, who has not attainted the age 55 years, to undergo a medical examination to be made by or under the direction of a teaching medical facility having experts in the field of claimed disability. Notwithstanding the provisions of this section, the board may accept an attending physician's certification of continued incapacitation where an on sight examination is not feasible. If the retirant refuses to submit to the medical examination (or furnish certification) in any such period the retirant's disability, pension may be discontinued by the board until the retirant's withdrawal of such refusal. . . . If upon such medical examination of a retirant, the medical facility finds that the retirant is physically able and capable of resuming employment in the job held at retirement, the retirant's pension shall terminate and the retirant shall be returned to city employment in a pay grade not lower than the pay grade held at the time of retirement. If the retirant refuses to return to city employment in such vacancy, the retirant shall be considered separated from city employment and the retirant's interest in the retirement system shall be determined by the provisions of the retirement system ordinance at that time.

(Bd.'s Ex. A). Section 2-359 in the Amended Ordinance provides as follows:

Sec. 2-359. Conditions for disability retirants.

(a)     Once every year following the retirement of a member with a disability pension or if circumstances warrant on a more often basis, the board shall require any disability retirant to undergo a medical examination to be made by or under the direction of the Medical Director or other Physician. The board may also require and accept an attending Physician's certification of continued incapacitation in addition to or in lieu of an examination by the Medical Director or other Physician. . . .

(b)    If based upon a prior examination, or upon a medical examination of a retirant under this section, the retirant is able to: 1) resume employment in the City in any position which the City is then willing to offer, or 2) resume employment in the position held at retirement, a position available or offered after retirement, then the retirant's pension shall terminate and the retirant shall be returned to city employment . . .

(Bd.'s Ex. B).

Shaw was hired by the City of Riverview as a full-time utility service worker on January 28, 1992. Shaw sustained a shoulder injury on the job in 2009. As a result of the 2009 shoulder injury, Shaw applied for a duty disability pension. (Bd.'s & Shaw's Stmts. at ¶¶ 11-14).

At the time Shaw applied for a duty disability pension, the Original Ordinance provided as follows:

Sec. 2-351- Duty disability incurred

Upon the filing of a written application with the board by a member . . . a member who becomes permanently and totally incapacitated for their prescribed duty as a city employee, shall be retired by the board, if, and only if, the following conditions are met:

(1)    The application for disability retirement is submitted with the medical reports, indicating that the employee qualifies for a disability retirement under the provisions of this division.

(2)    That the employer-employee is given reasonable opportunity to review the medical data submitted in support of the application, and if deemed necessary obtains an independent second medical opinion by a duly licensed physician or specialist in the field of the claimed disability.

(3)    In the event that the two medical opinions are inconsistent or inconclusive, the board shall require a further medical examination of the applicant at a teaching medical facility, having specialists in the field of claimed disability.

(Bd.'s Ex. A).

Shaw's duty disability pension was granted on July 1, 2010. (Bd.'s & Shaw's Stmts. at ¶¶ 11-14).

Shaw was sent for a medical evaluation on November 10, 2015, to determine whether he

continued to be permanently and totally disabled. At the time he was sent for the November 10 evaluation, Shaw was 54 years old.

That medical evaluation was performed by Jonathan Zoltan, M.D. Dr. Zoltan prepared reports of his findings, which were provided to the Board's Medical Director MMRO, Inc. (Bd.'s & Shaw's Stmts. at ¶¶ 15-18). MMRO, Inc. provided the report to the City of Riverview Retirement Board of Trustees with the finding that Shaw was not totally incapacitated from the performance of his duties. (Bd.'s & Shaw's Stmts. at ¶ 20).

Shaw was notified by letter dated March 14, 2016 that the Retirement Board would address his pension status at its March 24, 2016 meeting, which Shaw signed as receiving on March 18, 2016. Shaw responded to this letter on March 19th and requested an additional 30 days to prepare for the meeting, including to provide his own medical records. Shaw's requested extension was granted. (Bd.'s & Shaw's Stmts. at ¶¶ 21-23).

Shaw engaged counsel to represent him with respect to his disability pension issues, including to represent him during the Board meeting. (*Id*. at ¶ 24).

Shaw was provided a copy of the MMRO, Inc., medical report dated February 10, 2016, along with the March 14, 2016 meeting notification letter. (Bd.'s & Shaw's Stmts. at ¶ 25).

The Board meeting ultimately took place on April 28, 2016. During that meeting, Shaw was represented by counsel. During the meeting, Shaw gave a statement to the Board. Several individuals attended the Board meeting on Shaw's behalf and some of them spoke to the Board. Shaw also brought his own medical records to the meeting. (Bd.'s & Shaw's Stmts. at ¶¶ 26-30).

Shaw used the services of a videographer and court reporter to the April 28, 2016 Board meeting. The Board voted 6 to 1 to terminate Shaw's duty disability pension. (Bd.'s & Shaw's

Stmts. at ¶¶ 31-32).

It appears undisputed that there is no appeal provision for decisions of the Board in the Riverview Ordinances.  (*See* Pl.'s Am. Compl. at ¶ 51) ("There is no appeal provisions for decisions of the Board in the Riverview Ordinances and Plaintiff has otherwise fully exhausted all remedies available for redressing the grievances complained of herein."); (Defs.' Answer, ECF No. 57,  at ¶ 51) (Responding that "Defendants admit that there is no appeal provision for decisions of the Retirement Board in the City Code" and neither admit nor deny remaining allegations for lack of information.).

## STANDARD OF DECISION

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party has the initial burden of proving that "no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party."  *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

**I.     Shaw's Procedural Due Process Claim**

In Count III, Shaw asserts a claim that he was deprived of property without due process of law. More specifically, he asserts that he "has a property right in the continuation of his duty disability retirement and the other benefits afforded him under the City's retirement System, and defendants are prohibited from depriving [him] of that property absent due process of law." (Am. Compl. at ¶ 67). Shaw alleges that while he was afforded the opportunity to address the Board at its scheduled meeting, the hearing was not meaningful and did not comport with the constitutional-minimum due process protections for a number of reasons." (*Id*. at ¶ 70).

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To prove a procedural due process claim, a plaintiff must establish: 1) that they have a life, liberty, or property interest protected by the Due Process Clause; 2) that they were deprived of that protected interest; and 3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

As the parties here recognize, a "procedural due process analysis addresses two questions:" 1) whether there exists a protected interest that has been interfered with by the state; and 2) if so, whether the "procedures attendant upon that deprivation were constitutionally sufficient." *Bazzetta,* 430 F.3d at 801.

The Board's Motion for Summary Judgment asserts that Shaw's Due Process claim fails as a matter of law, asserting that: 1) Shaw does not have a protected property interest in the continued receipt of duty disability benefits; and 2) even if he did, the undisputed evidence establishes that Shaw was provided all the process that was due.

**A.      Does Shaw Have A Protected Property Interest In Continued Receipt Of His Disability Benefit?**

The Board first asserts that Shaw does not have a protected property interest in the continued receipt of duty disability benefits.  But the Board's opening brief acknowledges that "[t]here is little guidance from Michigan federal courts on the issue of whether an individual has a property interest in a duty disability pension benefit."  (Bd.'s Br. at 8 n.1).

The Board then directs the Court to cases that do not involve the issue of whether an employee has a protected property interest in the continued receipt of duty disability benefits after an application for a duty-disability pension has already been granted:

> While Plaintiff may have some unilateral expectation that he should receive a duty disability pension, the Ordinance does not create a legitimate claim of entitlement. The Ordinance provides that the Board may retire an eligible member, provided that the eligible member is deemed permanently and totally disabled.  This provision is insufficient to instill a claim of entitlement in Plaintiff. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (holding that an employee covered by a state worker's compensation system did not have a property interest in immediate, unconditional payment of worker's compensation benefits when those benefits were conditioned on determinations of eligibility); *Zucker v. United States*, 758 F.2d 637 (Fed. Cir. 1985) (noting that a plaintiff's protected property interest does not arise until he is entitled to immediate payment under pre-existing law); *Ash*, 699 F.2d 822 (finding that teachers had no legitimate claim of entitlement to receiving the salary outlined in their contracts as the teachers did not fulfill their contractual obligations and the statute did not prohibit the district from lowering their salaries).

(Bd.'s Br. at 7-8).

In his response, Shaw argues that he has a protected property interest in the continuation of his duty-disability benefits.  Shaw argues that property interest is "grounded in several state-law sources," and that "[m]ost significantly, a protected property right is created by the language of the Retirement Ordinance because its provisions establish a claim of entitlement to the

ongoing receipt of duty disability retirement benefits in accordance with the limitations and procedures in the ordinance." (Shaw's Br. at 6). Shaw's brief directs the Court to authority to support his argument.

In the Board's Reply Brief, the Board states that it disagrees with Shaw's position that he has a protected property interest. It does not, however, respond to Shaw's analysis of that issue. That is, the Board does not discuss *Kahles* or any of the other cases and arguments set forth in Shaw's Brief. Rather, the Board's Reply Brief asserts that this Court need not resolve what it acknowledges is a "complicated state law issue" of whether there is a protected interest because, as a matter of law, Shaw was provided all the process that was due.

Given what has been presented, it appears that Shaw had a protected property interest. As explained by the Sixth Circuit:

> In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court elaborated upon the kinds of interests protected by the Fourteenth Amendment. The Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. The Court further explained that property interests are not created by the Constitution itself, but rather by "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Applying this principle, the *Roth* Court found that an untenured professor, whose appointment was for only one year, did not possess a protected property interest in his continued employment after the term of his appointment expired. *Id.* at 578, 92 S.Ct. 2701.

*Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)).

Thus, the Sixth Circuit has "recognized that 'a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary.'" *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 605 (6th Cir.

2016) (quoting *Med. Corp., Inc., supra*).  That is because "[i]f an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it."  *Med. Corp., Inc*., 296 F.3d at 409-10.

In order to have a protected property interest in the continued receipt of duty-disability pension benefits, Shaw "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the [Board] to rescind it."  *Med. Corp., Inc*., 296 F.3d at 410; *see also Golden v. Town of Collierville*, 167 F. App'x 474, 478 (6th Cir. 2006).

Here, Shaw directs the Court to, among other things, Riverview's Ordinance.  That Ordinance set forth specific criteria that had to be met in order for Shaw to receive a duty-disability pension.  It is undisputed that the Board granted  Shaw a duty disability pension on July 1, 2010 and he began receiving monthly benefits at that time.  (Bd.'s & Shaw's Stmts. at ¶¶ 11-14).  Once that benefit was conferred to Shaw, the only way the Board could terminate Shaw's duty disability pension benefits is by following the provisions for doing so in the ordinance. Thus, any termination is not left to the Board's unfettered discretion.

This same argument was made before, and accepted by, the district court in *Kahles v. City of Cincinnati*, 2015 WL 5016505 (S.D. Ohio 2015).  In that case, the district court concluded the plaintiffs established a protected interest in the continued receipt of disability retirement benefits, explaining:

> Plaintiffs rely on *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), finding that plaintiffs' interest in the continued receipt of Social Security disability benefits is a statutorily created property interest protected by the Due Process clause. Plaintiffs also cite *Mathews v. OPERS*, Case No. 2:12-cv-1033 (S.D. Ohio, March 12, 2015 Order), where Magistrate Judge King recently concluded that disability retirement benefits granted under the Ohio Public Employees Retirement System are similarly protected. Recipients of these benefits must undergo annual evaluations to continue their eligibility. But once benefits are granted, they

continue unless and until the recipient becomes ineligible under the laws governing the program. Plaintiffs argue that these authorities demonstrate that their disability benefits are entitled to procedural due process protection.

The City argues that Plaintiffs' disability benefits are not vested under the City Code, and therefore are not entitled to procedural due process protection. Plaintiffs need not demonstrate that their benefits are "vested" under local or state law in order to show a "legitimate entitlement" to those benefits. Each of the Plaintiffs was injured or suffered some condition that entitled each of them to receive a disability retirement allowance under the City Code's definition of "disability." Plaintiffs continued to receive those benefits, in some cases for many years. The only basis upon which the Board could reduce or discontinue the benefits is defined in the Code, and is not left to the Board's unfettered discretion. The Court finds these facts are sufficient to establish an interest in the receipt of the benefits that is protected by procedural due process.

Each Plaintiff was deprived of his or her benefits, so the only issue in dispute is whether they received adequate process . . .

*Id*. at *4-5. The district court then proceeded to the second question of the procedural due process analysis – whether adequate process was received. It ultimately concluded there was no procedural due process violation because adequate process was afforded.

As Shaw's counsel notes, the district court's decision was affirmed in an unpublished decision, but the Sixth Circuit did not discuss the protected interest issue, as is often the case. *Kahles v. City of Cincinnati*, 704 F. App'x 501 (6th Cir. 2017). But this Court still finds the district court's analysis of the issue persuasive.

In addition, one of the cases that the Board relied on contains support for Shaw's position on this issue:

In *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), we held that an individual receiving federal welfare assistance has a statutorily created property interest in the continued receipt of those benefits. Likewise, in *Mathews, supra,* we recognized that the same was true for an individual receiving Social Security disability benefits. In both cases, an individual's entitlement to benefits had been established, and the question presented was whether predeprivation notice and a hearing were required before the individual's interest

in continued payment of benefits could be terminated. See *Goldberg, supra,* at 261–263, 90 S.Ct. 1011; *Mathews, supra,* at 332, 96 S.Ct. 893.

Respondents' property interest in this case, however, is fundamentally different. Under Pennsylvania law, an employee is not entitled to payment for *all* medical treatment once the employer's initial liability is established, as respondents' argument assumes. Instead, the law expressly limits an employee's entitlement to "reasonable" and "necessary" medical treatment, and requires that disputes over the reasonableness and necessity of particular treatment must be resolved *before* an employer's obligation to pay—and an employee's entitlement to benefits—arise. See 77 Pa. Stat. Ann. § 531(1)(I) (Purdon Supp.1998) ("The employer shall provide payment ... for *reasonable* surgical and medical services" (emphasis added)); § 531(5) ("All payments to providers for treatment ... shall be made within thirty (30) days of receipt of such bills and records *unless the employer or insurer disputes the reasonableness or necessity of the treatment* " (emphasis added)). Thus, for an employee's property interest in the payment of medical benefits to attach under state law, the employee must clear two hurdles: First, he must prove that an employer is liable for a work-related injury, and second, he must establish that the particular medical treatment at issue is reasonable and necessary. Only then does the employee's interest parallel that of the beneficiary of welfare assistance in Goldberg and the recipient of disability benefits in Mathews.

*American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 60 (1999) (italics in original).

## B. Was Shaw Afforded All Process He Was Due As A Matter Of Law?

Once a court determines "that the due process clause applies" to a Plaintiff's claimed property right, the Court is "then faced with the question of what process is due," and "whether a federal cause of action is the appropriate remedy for [the plaintiff's] deprivation." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1349 (6th Cir. 1992). (citations omitted).

Here, the parties' briefs focus on whether Shaw was afforded all process that was due, assuming he has a protected property interest.

"When a plaintiff has a protected interest, a predeprivation hearing of some sort is generally required to satisfy the dictates of due process." *Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). "That

predeprivation process need not always be elaborate, however; the amount of process required depends, in part, on the importance of the interests at stake." *Leary*, 228 F.3d at 742.

In *Loudermill,* the Supreme noted that the "significance of the private interest in retaining employment cannot be gainsaid." Similarly, an individual's interest in maintaining his continued receipt of pension benefits cannot be reasonably disputed.

The "Due Process Clause is flexible and provides different levels of protection depending on the particular situation and circumstances of the deprivation." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016).

"Moreover, the sufficiency of predeprivation procedures *must* be considered in conjunction with the options postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required." *Leary v. Daeschner*, 228 F.3d 729, 743 (6th Cir. 2000) (emphasis added). Indeed, "[i]n some cases, postdeprivation review may possibly be sufficient, and no predeprivation process is required." *Id.*

As it relates to predeprivation procedure, the "essential requirements of due process" are "notice and an opportunity to respond" by "present[ing] reasons, either in person or in writing, why [the] proposed action should not be taken." *Loudermill,* 470 U.S. at 546. "If no more than this is provided" at the predeprivation stage, then "a post-termination hearing more akin to a trial is subsequently required" with the postdeprivation procedure. *Bramley v. Knudson*, 917 F.2d 1304 at *2 (6th Cir. 1990); *see also Loudermill, supra*, at 546 ("Our holding rests in part on the provisions in Ohio law for a full post-termination hearing.")

Thus, evaluation of whether a plaintiff was provided all process due involves consideration of whether "they were denied adequate process prior to *and following* the

deprivation" at issue. *Puckett,* 833 F.3d at 606 (emphasis added).

Here, the Board relies heavily on *Cremeans v. City of Roseville*, 861 F.2d 878 (6th Cir. 1988). In that case, the plaintiff alleged "that he was denied procedural due process when he was placed on involuntary medical disability retirement from the City of Roseville Police Force." *Id.* at 879. That claim proceed to a jury trial and the plaintiff was awarded damages by the jury, but the trial court declined to reinstate the plaintiff to his position as a patrolman.

On appeal, the Sixth Circuit reversed, finding as a matter of law there was no procedural due process violation. As to the first question, whether the plaintiff had a protected interest, the court stated that it "need not resolve" that "complicated state law" issue and assumed without deciding that the plaintiff had a protected interest. The court then concluded that there was no procedural due process violation as a matter of law.

In addressing the predeprivation procedure, the court noted that the plaintiff had 26 hours notice prior to the hearing, knew why he was being considered for medical retirement and the evidence relating to same, and was given an opportunity to present his side of the story at the predeprivation hearing. The court also noted that the plaintiff had the ability "to contest the Retirement Board's decision under the procedures provided by" state statutes but failed to do so. The Sixth Circuit concluded, under these circumstances, that the plaintiff's procedural due process claim failed as a matter of law.

In a subsequent case, Judge Leitman similarly found, relying on *Cremeans*, that a plaintiff's procedural due process claim failed as a matter of law. *McCaw v. Charter Twp. of Waterford*, 2016 WL 4191740 (E.D. Mich. 2016). The district court found that, as in *Cremeans*, the plaintiff had notice prior to the hearing as to why he was being considered for involuntary

retirement, by virtue of a letter he received several days before the hearing. In addition, although the plaintiff "did not have the opportunity to address the Pension Board in person," he was allowed to submit his position in writing to the Board. "Moreover, [the plaintiff] had substantial post-termination process available to him." *Id.* at * 10. "Like *Cremeans*, McCaw could have challenged the Pension Board's decision" under state statutes but chose not to do so. Accordingly, the district court concluded that the plaintiff "had a meaningful opportunity to oppose the Pension Board's decision to terminate his employment before it occurred and a serious opportunity to post-termination review of that decision. Thus, as in *Cremeans*, McCaw did not suffer a deprivation of property without due process of law." *Id.*

Here, the Board relies on *Cremeans* and asserts that Shaw was given even more predeprivation process than the plaintiff in that case. It is undisputed that: 1) Shaw was given advance written notice of the hearing; 2) Shaw was given MMRO's report prior to the hearing; 3) the Board granted Shaw's request for an additional 30 days to prepare for the hearing; 4) Shaw was represented by counsel at the hearing and both Shaw and his counsel were allowed to address the Board; 5) Shaw brought his own medical records to the hearing; 6) others appeared at the hearing and expressed their support for Shaw; and 7) Shaw had a videographer and court reporter at the hearing.

In response to the motion, Shaw complains that he was not given certain documents referenced in MMRO's report prior to the hearing, but has not provided any authority that would suggest that is required for purposes of a predeprivation hearing.

Accordingly, *if* like the situations in *Cremeans* and *McCaw*, Shaw could have challenged the Board's decision in a more substantive postdeprivation hearing, then it appears that Shaw's

procedural due process claim would fail as a matter of law.  The problem is, however, that the parties failed to address what, if any, kind of postdeprivation procedure for appealing the Board's challenge was available to Shaw.

In *Cremeans* and *McCaw*, the plaintiffs clearly had postdeprivation procedures available to them, under Mich. Comp. Laws § 38.514.  That statute provides for postdeprivation procedures before the civil service commission, and appeals to circuit court, of suspensions and discharges of firefighters and police officers in Michigan.  That statute does not apply to Shaw.

Without knowing what postdeprivation procedures were available to Shaw, this Court cannot conclude that his procedural due process claim fails as a matter of law.  If, for example, Shaw had no ability to appeal the Board's ruling, either with the Board or by virtue of some administrative process provided under Michigan statutes or court rules, then Shaw's procedural due process claim should proceed.  Conversely, if Shaw had the opportunity to appeal the Board's ruling by virtue of some administrative process available under Michigan law and simply failed to do so, then like the plaintiffs in *Cremeans* and *McCaw*, his claim would fail.

It appears undisputed that there is no appeal provision for decisions of the Board in the Riverview Ordinances themselves.  (*See* Pl.'s Am. Compl. at ¶ 51) ("There is no appeal provision for decisions of the Board in the Riverview Ordinances and Plaintiff has otherwise fully exhausted all remedies available for redressing the grievances complained of herein."); (Defs.' Answer at ¶ 51 ("Defendants admit that there is no appeal provision for decisions of the Retirement Board in the City Code" and neither admitting nor denying remaining allegations).

That does not mean, however, that some other avenue for an administrative appeal under Michigan law was not available to Shaw.  The hearing transcript of the Board's April 28, 2016

meeting indicates that the topic of "an administrative appeal" of the Board's decision was actually mentioned at that meeting. (*See* 4/28/16 Hrg. Tr. at 44) (Wherein City attorney references the Board's determination as "appealable," and "your appeal period" and an "administrative appeal if you're going down that road.").

Accordingly, this Court ordered the parties to file supplemental briefs of no more than 10 pages on this issue. They have since filed those briefs. (ECF Nos. 115 & 116).

Defendants' supplemental brief asserts that "much like the plaintiffs in *McCaw, Cremeans*, and *Dziuban*, Plaintiff had extensive post-deprivation process available to him under state statutes and the Michigan Court Rules, which he failed to pursue." (ECF No. 115 at 7).

A case cited by Defendants states that "[l]itigants seeking judicial review of decisions by administrative agencies have three potential avenues of relief:" 1) "review prescribed in the statutes applicable to the particular agency," 2) "appeal pursuant to M.C.L. § 600.631 . . . which allows appeals from such decisions to circuit court," or 3) "the method of review provided by the Administrative Procedures Act, M.C.L. § 24.201 et seq." *Blue Cross & Blue Shield of Michigan v. Commissioner of Ins*., 155 Mich. App. 723, 728-29 (1986).

In their supplemental brief, Defendants assert that "[a]t least two of the three potential avenues were available to Plaintiff in this instance." (Def.'s Supp. Br. at 7). Defendants *do not* argue that Plaintiff could have pursued the first stated avenue, by virtue of some kind of appeal provided for in a statute applicable to the City of Riverview's Retirement Board. Rather, they assert that the both the second and third options could have been pursued by Plaintiff.

The second option would be pursuant to Mich. Comp. Laws § 600.631, which provides that "[a]n appeal shall lie from any order, decision, or opinion of any *state* board, commission, or

agency . . ." to circuit court.  (Emphasis added).

The third option, would be an appeal via Mich. Comp. Laws § 24.201 *et seq*., the

Administrative Procedures Act.

As Plaintiff's supplemental brief notes, however, the case law indicates that both of those

procedures only apply to *state* agencies, not municipal agencies.  *See, e.g.*, *Villa v. Civil Svc.*

*Comm'n,* 57 Mich. App. 754, 757-58 (1975) (Noting that, by its terms, Mich. Comp. Laws §

600.631 applies to "state" boards, commissions and agencies, and that express provision for state

agencies "excludes an implied application of that section to municipal agencies," and

additionally, "[t]his Court has held that the terms of the state administrative procedures act do

not apply to municipal agencies.").  The following explanation in *Robertson* is helpful:

> The authority for cities to create civil service commissions is provided in
> Const.1963, art. 11, § 6. Pursuant to this constitutional provision, the Michigan
> Legislature enacted M.C.L. § 117.4i(7); M.S.A. § 5.2082 as part of Michigan's
> Home Rule Act, which permits home rule cities to provide for the establishment
> of a civil service commission in their charters. The actual operation of general
> municipal civil service commissions, however, is not governed by statute,
> although such a statute has been enacted with regard to municipal fire and police
> employees. See the firemen and policemen civil service act, M.C.L. § 38.501 *et*
> *seq.;* M.S.A. § 5.3351 *et seq.* Where a police or fire employee disputes a ruling of
> the civil service commission, at least with regard to certain disciplinary actions,
> that employee may seek judicial review of the commission's decision within 90
> days of the commission's ruling in "the circuit court of the county wherein the
> city, village or municipality is situated". M.C.L. § 38.514; M.S.A. § 5.3364. *No*
> *comparable statutory provision exists with regard to non-police and non-fire*
> *municipal employees.*
>
> Moreover, the chapter of the Michigan Administrative Procedures Act providing
> for judicial review, M.C.L. § 24.301 *et seq.;* M.S.A. § 3.560(201) *et seq.,* fails to
> provide plaintiff a right of appellate review since that act *does not apply to*
> *municipal administrative agencies. Hendricks v. Sterling Heights Police & Fire*
> *Dep't Civil Service Comm.,* 85 Mich.App. 646, 652, 272 N.W.2d 170 (1978), *lv.*
> *den.* 405 Mich. 826 (1979); *Justewicz v. Hamtramck Civil Service Comm.,* 65
> Mich.App. 555, 561, 237 N.W.2d 555 (1975); *Montiy v. Civil Service Board of*
> *the City of East Detroit,* 54 Mich.App. 510, 515, 221 N.W.2d 248 (1974).

*Robertson v. City of Detroit*, 131 Mich. App. 594, 597 (1983) (emphasis added).

Accordingly, it appears that neither of the two options discussed by Defendants provide Plaintiff with any kind of postdeprivation procedure or ability to appeal the Board's ruling. As such, the Court shall deny Defendants' motion for summary judgment as to the procedural due process claim. It is Defendants' burden to establish they are entitled to summary judgment as to this claim, and they have not met that burden here.

## II.     Shaw's Declaration Of Rights Claim (Count VI)

The other remaining claim in this action is Count VI, titled Declaration of Rights. Defendants' motion ask this Court to decline to exercise jurisdiction over this count. Alternatively, they ask the Court to rule in their favor on this count as a matter of law.

### A.     Should The Court Exercise Jurisdiction Over Shaw's Declaration Of Rights Count?

Defendants' motion asks the Court to decline to exercise supplemental jurisdiction over Shaw's declaration of rights count.

"Exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is not mandatory." *Bituminous Cas. Corp. v. J & L Lumber Co, Inc*., 373 F.3d 807, 812 (6th Cir. 2004). As explained by the Sixth Circuit:

> The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has indicated that this act "confer[s] on federal courts unique and substantial discretion in

deciding whether to declare the rights of litigants." *Wilton,* 515 U.S. at 286, 115
S.Ct. 2137. In passing the act, Congress "created an opportunity, rather than a
duty, to grant a new form of relief to qualifying litigants." *Id.* at 288, 115 S.Ct.
2137. District courts must be afforded substantial discretion to exercise
jurisdiction "in the first instance, because facts bearing on the usefulness of the
declaratory judgment remedy, and fitness of the case for resolution, are peculiarly
within their grasp." *Id.* at 289, 115 S.Ct. 2137.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).  A district court's decision as

to whether to take jurisdiction over a declaratory judgment action is reviewed for abuse of

discretion.  *Id.*

To guide the exercise of that discretion, the Sixth Circuit has identified the following

factors, one of which has three sub-factors:

> 1) whether the declaratory judgment would settle the controversy;
>
> 2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata,"
>
> 4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction, which considers:
>
>> a. whether the underlying factual issues are important to an informed resolution of the case;
>>
>> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>>
>> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
>
> 5) whether there is an alternative remedy that is better or more effective.

*Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

The above "factors are not, of course, always equal." *Id.* The first factor is whether the requested declaratory judgment would settle the controversy. The second factor, whether the judgment would serve a useful purpose in clarifying the relations at issue, is closely related to that. That is because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale*, 513 F.3d at 557.

Defendants' motion asserts that the Court should not exercise jurisdiction here because the requested declaratory judgment would not resolve the controversy and would therefore serve no useful purpose. Defendants further state that "there was an alternative remedy available to Plaintiff: Plaintiff could have initially filed a declaratory judgment action in state court to resolve these undecided issues relating to the interpretation of a local ordinance consistent with state law. *See, e.g., Scottsdale Ins.*, 513 F.3d at 562 (noting that state courts may be in a 'superior position to resolve undecided questions of state law)." (Defs.' Br. at 13).

Plaintiff's brief in response to Defendants' Motion for Summary Judgment stated that a "state action is not currently pending in this matter, and one was not filed previously." (Pl.'s Br. at 20). After filing that brief, however, and without advising this Court,[1] Plaintiff then filed a state court action against Defendants. In that state-court action, Plaintiff asserts that the City and the Board violated the collective bargaining agreement that applied to Plaintiff in relation to the termination of his benefits. Plaintiff also has a declaration of rights count (Count IV) that asks the state court to declare his rights under the ordinance, adding the issue of whether Plaintiff could be required to accept a new position.

---

[1]Defendants' supplemental brief notes that Plaintiff's counsel failed to disclose that they had filed that state action during a status conference with this Court on October 30, 2018, and during facilitation on September 18, 2018. (Defs.' Supp. Br. at 3).

Accordingly, Plaintiff's actions in bringing that separate, subsequent state-court action implicitly acknowledge that the requested declaratory judgment in this action will not settle the controversy between these parties or clarify the legal relations in issue. Moreover, the Sixth Circuit has expressed that a "district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law" and that appears to the situation presented here. *Western World Ins. Co.*, 773 F.3d at 760. Accordingly, this Court declines to exercise jurisdiction over the request for declaratory relief in this case.

## CONCLUSION & ORDER

As explained above, to the extent that Defendants' motion asks this Court to decline to exercise jurisdiction over the request for declaratory relief in this case, that request is GRANTED and Count VI is DISMISSED WITHOUT PREJUDICE.

The motion is DENIED in all other respects, and Plaintiff's procedural due process claim (Count III) remains in this action.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 14, 2019